Thank you, Your Honors. Good morning. Good morning. Florence Brummer appointed to represent Virginia Quintero-Mendoza on appeal from Phoenix, Arizona. May it please the Court, I'd like to reserve two minutes for rebuttal. All right, we'll try. In this case, there was little to no evidence at trial to establish the defendant, Ms. Quintero-Mendoza, with her and a drug trafficking organization. The trial attorney filed a motion asking that the expert testimony not be allowed in. It was allowed in. This was an error. Okay, but it appears that the defendant did not object prior to the second trial to the expert testimony regarding drug trafficking and organizations, so why doesn't that limit our review to plain error? There was not a renewed written motion, but the judge had already done a written motion. Yeah, but you don't get to go back in the last trial, because there was two trials here. The first trial was a mistrial, right? There were two trials, right, but the Sepulveda Barrera case that says once the judge makes a definitive ruling, there's no need to renew it. Unless there are changed circumstances, to go back to the last argument. That's correct, but really the only changed circumstances was that they were doing the conspiracy charge. They filed a new indictment. They did file a new indictment, but it still But the motion was about that expert testimony, and that was not a changed circumstance, and so we still had that ruling, and the court was abiding by that ruling. Was? But the case law is different on whether it's a conspiracy or whether it's an individual charge, and so the case law where it's a conspiracy is much more supports the calling of an expert to explain to jurors what is not common knowledge to people in terms of that. And facts that are not common knowledge to people, you know, the average juror doesn't really know how drugs get across the border, doesn't know about compartments, doesn't know about amounts, doesn't know what would be for sale, what the values would be, all of those type of things. So those are not within the common knowledge, and the purpose of calling an expert is if it's information that a jury wouldn't otherwise know to, it's not telling them the person's And your client's defense was that she was an unknowing courier, and part of the expert testimony was you don't get to carry in compartments drugs of this extensive value and not know they don't trust you, you know, like I wouldn't be, you know, a trusted courier. Yes, Judge Callahan, you are correct, there's a difference between the cases for where there's a conspiracy charge and a non-conspiracy charge. For example, Pineda-Torres and Vallejo both did not have a conspiracy charge, but still the same analysis needs to be done. And in the cases where, like for example, in the, I'm not sure if I'm saying this right, but Mejia Luna, M-E-J-I-A, that was the alien smuggling prosecution case that was cited by the government. At least in that case, there was some other evidence that was connecting the defendant to the actual crime. In this case, there wasn't anything. Except she has a whole bunch of drugs in the car that she's driving, she only has one little key, and then there's all this evidence that she's an unemployed gal that's got over $30,000 in her bank account and has five cars. So when you say that there's no evidence, that might be called an understatement. Well, Your Honor, there was nothing that connected her, and I know the drugs connect her to possibly the drug conspiracy. We don't all carry that in a secret compartment under our car, and what was the street value was a ton of money. Right, it was. But there was an analysis done of both of her cell phones, there was an analysis done of her crossing history. She had family there. In her cell phones, something that we might usually see in a conspiracy case would be numbers or texts from people saying, where are you, where is it, what time are you going to be there, that sort of thing. And really the only text message that comes in is the one that talks about where are my kids, how are you, from the boyfriend. Well, didn't they use the text messages to prove that contrary to her statements that her children were not staying with the father? Well, that's what they alleged, but there was some questioning that was done of the border patrol agent and of the people who did the investigation where they said, well, did you ask the family if somebody had to go pick up these kids or anything? Did you go talk to the boyfriend? And none of that was done. It was just a speculation of that text message that it meant that the kids weren't there, but there wasn't anything done further than that. Under the Lennock case, isn't the government entitled in a conspiracy case to rely on the compartments and the quantity of drugs and so on that one can infer there was a conspiracy with others in order to accomplish all of this? Do you know which case I'm talking about, Lennock, 1994? I believe I do, Your Honor, but I'm not sure that I understand the question. It's like you can't, okay, the compartment. Now, we don't want to be anti-woman, and if they said that I wouldn't be able to build the compartment, that would be a very specific claim against Connie Callahan. She would not be able to, but there are women that probably could. But that being said, this isn't a little mom and pop thing, a little bit of dope and whatever. I mean, it's a nice compartment that's built there, and they have five cars and the crossing. I mean, it's really quite, you know, it's more sophisticated. Whether you say complicated or sophisticated, that's. . . I see what you're saying, Judge Callahan, and I can't build the compartment either, I'll admit. But it still has to pass the standard for Rule 403 and 702, 3 and 4. And, you know, these things could have been done in the government's argument, rather than what's given in the case is what's called the blueprint testimony. And if you look at the testimony from that time, and I didn't do an exact breakdown of it, but I think somewhere between 25 and 50 percent of the time for trial is used with this expert testimony, and not tying her to anything. It's just generally saying, like, for example, drug mules can be of any gender or age. Sometimes they're children in the cars. Couriers can appear overly friendly. They're not always nervous, you know. Things like that is just doing the blueprint of saying, this is why this woman is guilty, instead of actually giving her, like, saying how it, you know, evidence that applies to her and how she's part of the conspiracy, because they don't have it. So they use the expert with this blueprint and say, she fits into it. May I reserve my. . . Yeah, you can reserve that. You might want to think about, too, when you come back, that how you would respond to the court said you. . . You open the door, and then they came in. So I'll give you two minutes for rebuttal. Thank you. Good morning. Good morning. May it please the Court, Rachel Hernandez on behalf of the United States. In this case where the defendant was driving her own car, which. . . Can I ask you why you sought a superseding indictment that had two conspiracy counts. Of course, you can ask me anything. After there was a hung jury. Well, there are a lot of reasons. Did you provide a predicate to introduce all of this expert testimony? There are a lot of reasons why a superseding indictment may be sought. In this case, there was not a change in the theory of the case, and the superseding indictment conformed to the evidence that had come out in the first trial. So why did you bring it? I mean, it didn't affect the sentence.  Why did you bring it? Was it just to come under this rubric that if there's a conspiracy, you can get all this expert testimony in? No, Your Honor, I don't believe so. Of course, there's nothing in the record that says definitively why the superseding was sought in this case. However, I can tell you that the theory of the case didn't change, that the expert testified in both trials. In the first trial, his testimony took approximately 51 pages. In the second trial, 58. In the first trial, in both trials, I should say, testimony about blind mules, tested couriers, burning the plates through the crossing history, how much drugs get through the port of entry, the role of the courier, compartments. What you knew after the first trial, whatever you did didn't exactly work, so any fool wouldn't try it exactly the same the second time. But did you previously know what she was going to say before the first trial? Knowledge was — Did she make a statement to the police? Her statements were limited to why she had been in Mexico and what her employment was. She did not make any other statements beyond that. But the opening statement in the first trial, the defendant talked about cartels. And as Judge Callahan, you prefaced to Ms. Brummer before she sat down, they opened the door to this idea that there is a larger organization out there. I think both sides in this case agree that there is a larger organization. The question is how they function. And so the government should be allowed in a case where conspiracy is alleged to bring in evidence of what — of how these organizations operate. And so here, where the evidence is, there is evidence of her knowledge, contrary to the defense argument. It was her own car. The secret compartments were welded into her own car. They contained 20 kilograms of 95 percent pure meth and one kilogram of cocaine. That's precisely the point. What do you need an expert for to essentially almost take all the evidence out of the case? I mean, the expert is — you know, the expert is basically saying she's guilty. Well, the expert is explaining to — The expert to tell you that someone wouldn't entrust a million dollars' worth of evidence to bring into the country without telling them, I'll be careful, you know, there's a million dollars' worth of diamonds, drugs, whatever. You need an expert for that? Certainly a jury doesn't check their common sense at the door. Certainly — maybe they've watched Breaking Bad. People know somewhat how the drug trade works. But the expert is able to provide more context to that. I bet they made the drugs in the United States. New Mexico. The expert is able to explain to them, what does the change in the crossing history mean? Are secret compartments common? Is this something that just — An expert to tell a jury that secret compartments are uncommon? I mean, it just — it just — it just — basically, the expert is saying that she's guilty. Well, the expert is explaining how the drug trade works, and that is something that this Court has said is not in the common knowledge of most jurors in — Drug importation case, in a sense, is a conspiracy, because the individual who's smuggling the drugs into the country got it from somebody else. Someone else bought it with the intent to bring it in. I mean, all of these cases involve — I shouldn't say all, but almost all of these cases are obviously not people who did not agree with other people along the way to obtain the drugs to bring into the United States. And this — her role was — it's almost obvious. You know, it's hard to tell what causes a jury to be hung. You could have one wacky jury, and you get a hung jury. But this, to me, is an overwhelming case. And what you needed an expert here for is unclear to me, and particularly what is an obvious argument, that we do entrust a million dollars' worth of anything to someone to smuggle into the United States without telling them what they were carrying. Well, and again, Your Honor, I think to you and me, it is something that's obvious. But as this Court has said in — But is it obvious if the defense is that it was unknowing? Well, and that complicates it. And that was the next point I was going to make, which is that the defense brought out a lot of evidence about a scheme that had occurred in Texas where it was found that unknowing couriers were used. And so when they bring in that type of evidence and when they make those arguments that the cartels are at work using unwitting couriers to hide drugs — Was the defense argument that there had been cases where there were unwitting importers, was that factually accurate? It is factually accurate. But how did they elicit that testimony in front of the jury? Well, that was elicited through the government's expert. Doesn't the Murillo case allow the government in a case like this where there's a claim that she was an unknowing courier, doesn't that case allow the government to use an expert witness in this very situation? Yes, it does, Your Honor. In that case, there was actually much smaller amounts of drugs, 3.8 kilograms of meth, 2.5 kilograms of cocaine. And this court found that when it's relative — relevant, excuse me, probative and not unfairly prejudicial, this type of testimony is appropriate. And that is the situation in this case where conspiracy charges were pending and where the defendant's lack of knowledge was at issue, the expert testimony was properly admitted. But you just — you've acknowledged apparently that there were cases and there was evidence that there could be — you could be an unknowing importer. So what I don't understand is that to me makes the expert's testimony almost worse because it would suggest that it may not even be accurate. Well, he acknowledged that those cases do exist, but why this is not a case similar to those. Again, this is a case that was her own car, elaborate compartments, high value of drugs. The unwitting courier cases were small value of drugs. Those were people who crossed the border every day and went to school or work, and their car was in a known place, and it was scouted for months. And that is accurate. That's a case that occurred out of Texas. I don't have more facts than that. But the expert was able to explain why the defense argument that unwitting couriers are used, they may be used, but this is not the type of case where the defendant is carrying nearly $2 million worth of drugs in a car, that's hers, where her crossing pattern changed after she registered the car, where she lied about why she had been in Mexico, where her assets far exceeded what her unemployed status would indicate, what she had indicated to the Arizona Department of Economic Security. All that evidence proves is that there's overwhelming, it's overwhelming that she's guilty and what you need an expert for is unclear to me. Well, if the evidence is overwhelming. I mean, it's all those things that you just said. Then it's not, there's no prejudice to having the expert. But that may be. That may be. That may be a separate question, particularly if we have to apply a plain error standard. And that is what the government would urge in the changed circumstances in the second trial. And as to the defendant's second argument, and I think, Judge Corman, you've made this point, there was more than sufficient evidence for a jury to find the defendant guilty beyond a reasonable doubt in this case. If there's no further questions. Thank you. For your argument. Thank you, judges. Judge Callahan, to address your barn door question. This wasn't a case where there was no expert and then the expert had to be brought in to rebut what the defendant had said. There was already an expert. The prosecution opened the door on this. This wasn't rebuttal to what the defense was saying. The very first witness for the government gave a drug courier profile, what a drug courier can look like. But I thought the issue was raised in the opening statement. Am I wrong? The issue by the defendant that she had no knowledge. It was, Your Honor. But the defendant knew that this expert was coming. So you're not going to raise it in your opening statement? I mean, you would raise it in your opening statement. You don't have to. I mean, that's a choice that you make. It's sort of like when someone says, when a defendant doesn't testify, you can't claim that, you know, then later say, well, they forced me into that because they were going to impeach me with my felony conviction. You used to be able to, you know, it's kind of like the good news and the bad news or the truth and the ugly truth. Right. Exactly. But still, that was the government's main witness. And it was the defense attorney's choice to bring it up. But whether he brought it up or not, it was coming. So he had to deal with it. He filed the motion. The motion was denied. He had to make the argument. Well, what else would he have said? In a case like this, the only defense available, what he could have said that might have not opened the door was that the government can't prove beyond a reasonable doubt that she knew. That might not have opened the door, but he was essentially testifying. If you read what he said, he was saying she didn't know, which is, first of all, inappropriate. And then he's telling them about what happened in Texas or whatever. So there was a way to do this without necessarily testifying and opening the door in that way. I understand. Well, I think we have both of your arguments in mind. Okay. Unless there's further questions by the panel, this matter will stand submitted. Thank you both for your arguments. Thank you, Justice.
judges: Korman, Callahan, Smith